UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CR-35 DRL |
| RODRICK JONES, | |
| Defendant. | |

## OPINION & ORDER

Rodrick Jones requests compassionate release under 18 U.S.C. § 3582(c)(1). Typically the court cannot modify a judgment of conviction that includes a sentence of imprisonment, *see Dillon v. United States*, 560 U.S. 817, 824 (2010), but an exception exists when extraordinary and compelling reasons favor early release, and federal sentencing factors and any policy guidance from the sentencing guidelines support it, *see* 18 U.S.C. §§ 3553(a), 3582(c)(1)(A).

Mr. Jones seems to have exhausted his administrative remedies. He filed two requests with the Bureau of Prisons, and at least one was denied. The government hasn't pressed this defense here. *See United States v. Sanford*, 986 F.3d 779, 781-82 (7th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). The court accordingly considers his request on its merits, appreciating that he bears the burden to establish his eligibility for reduction or early release. *See, e.g.*, *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Mr. Jones (age 43) was sentenced seven months ago. He has served about 20 months of a 46-month sentence. He is incarcerated at FCI Terre Haute (Indiana). He has a projected release date of September 3, 2022. He has high blood pressure (hypertension), and he manages a kidney transplant and obesity. He remains particularly concerned about the risks of the COVID-19 pandemic.

Mr. Jones hasn't presented compelling and extraordinary reasons for compassionate release. Foremost, as much as he says COVID-19 concerns him, he has already contracted the virus and recovered promptly. Symptoms started on September 23, 2020 with a sore throat and elevated fever. He tested positive on September 24, 2020. He was asymptomatic two days later. Per protocol, he nonetheless remained in isolation until he was medically cleared on October 6, 2020. His brief convalescence belies the claim that he suffers from a serious medical condition from which he would not be expected to recover. *See* U.S.S.G. § 1B1.13 app. n.1(A)(ii) (assessing this risk); *see also Gunn*, 980 F.3d at 1180; *United States v. Levine*, 2021 U.S. App. LEXIS 1627, 5 (7th Cir. Jan. 21, 2021). Having recovered once, the expectation is that he would recover again.

That said, the immediate likelihood that he might contract the virus again is rather low. "To date, reports of reinfection have been infrequent." Ctrs. for Disease Control & Prev., *Interim Guidance on Duration of Isolation and Precautions for Adults with COVID-19* (Feb. 13, 2021).[1] Though medical science doesn't know everything about the virus that it will in time, current studies show the presence of antibodies in recovered patients up to eight months. *See, e.g.*, Nat'l Insts. Health, *Lasting Immunity Found After Recovery from COVID-19* (Jan. 26, 2021) (eight months)[2]; Patricia Figueiredo-Campos *et al.*, *Seroprevalence of Anti-SARS-CoV-2 Antibodies in COVID-19 Patients and Healthy Volunteers Up to 6 Months Post Disease Onset*, 50 Eur. J. Immunology 2025, 2026 (Dec. 2020) (six months); *see also* Jeffrey Seow *et al.*, *Longitudinal Observation and Decline of Neutralizing Antibody Responses in the Three Months Following SARS-CoV-2 Infection in Humans*, 5 Nature Microbiology 1598, 1604 (Oct. 2020) (showing peak immunity 3-4 weeks after infection with decline of antibody response thereafter).

COVID-19 deaths have been tragically high, but the pandemic currently trends downward

---

[1] *See* www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html#:~:text=Currently%2C%20it%20is%20unknown,from%20infection%20in%20humans.

[2] *See* www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19.

while the number of vaccinations trends upward. Today almost a dozen vaccines have been approved around the globe, with about seventy more in the pipeline. *See* Carl Zimmer *et al.*, *Coronavirus Vaccine Tracker*, N.Y. Times (last visited Feb. 22, 2021).[3] Four are in use in the United States. *See id.* Rising inoculations also sharply mitigate any risk.

The BOP has been heroically undeterred in its efforts to combat this crisis and has implemented several contagion-prevention protocols for inmate and staff safety—evolving as the pandemic has evolved—and now it too is vaccinating inmates. FCI Terre Haute currently houses 861 inmates, with only 8 inmates having COVID-19 (a mere one percent) and with 346 inmates having been vaccinated (over 40 percent). Three additional virus strains identified in the public could alter the pandemic's trajectory and could alter the risk assessment of reinfection for Mr. Jones, but today the environment at FCI Terre Haute doesn't put him at acute risk. That is particularly true as vaccines are readily rolled out while his antibodies lend interim protection.

Even so, his medical conditions aren't so compelling and extraordinary to justify early release. Mr. Jones' high blood pressure doesn't present an increased risk based on the latest wisdom from the CDC. It might certainly, but the CDC recommends that he take his medication, and the BOP has been providing such medication to him. Chronic kidney disease increases his risk of severe illness from COVID-19, though his kidney transplant remains well treated by medication too; and his quick recovery from COVID-19 before provides compelling evidence that he would again recover rather than compelling evidence of a need for early release.

From his latest medical records (November 2020), Mr. Jones weighs 250 pounds, up from 230 pounds at the time of the presentence report. This translates to a body mass index of 33.9, which then puts him at increased risk according to the CDC, but not in any way that the court considers compelling or extraordinary, even in combination with his other conditions. Three months ago, Mr.

---

[3] *See* https://www.nytimes.com/interactive/2020/science/coronavirus-vaccine-tracker.html.

Jones told his physician that he preferred physical activity over medication to address his obesity. The Bureau of Justice Statistics reports that a vast majority of inmates are obese based on BMI. *See* U.S. Dep't Justice, *Special Report: Medical Problems of State and Federal Prisoners and Jail Inmates* 1 (updated Oct. 4, 2016); *see also* Meaghan A. Leddy *et al.*, *Consequences of High Incarceration Rate and High Obesity Prevalence on the Prison System*, 15 J. Correctional Health Care 318, 318-25 (Oct. 2009). By definition then, his obesity isn't extraordinary—much less compelling given his speedy recovery once already.

The BOP continues to treat all of Mr. Jones' conditions. He has received extensive care—as detailed in nearly 150 pages of medical records (ECF 87-2). For instance, after his release from COVID-19 isolation in October 2020, medical staff performed an ultrasound and lab testing to monitor his kidney transplant. In November 2020, he underwent a nephrology evaluation after which the doctor adjusted his blood pressure medication. His care is ongoing.

Mr. Jones reports in his medical records a history of cholesterol issues, something he also cited to the warden in his request for early release, but his blood work from October 2020 reflects healthy cholesterol levels, including base, HDL, and LDL levels (*Id.*). Nor is cholesterol a COVID-19 concern. He now complains too of sleep apnea and chronic bronchitis, but these conditions aren't documented in his presentence report or his medical records. They appear only in his request to the warden. In short and all told, he hasn't presented compelling and extraordinary reasons for compassionate release.

The factors under 18 U.S.C. § 3553(a) militate against early release. Not much has changed in seven months. Mr. Jones pleaded guilty to two counts—distributing cocaine base and possessing with the intent to distribute cocaine base. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(c). Still, his conduct revealed a danger beyond that of mere possession and distribution of drugs. *See* 18 U.S.C. §§ 3553(a)(1), (a)(6). His drug activity led to a transaction whereby he sold drugs in exchange for four firearms (two fully automatic AK-47s and two handguns). He not just possessed a firearm but intended to deal in firearms. He had already secured a buyer for one. This heightened danger to the community caused

4

by the combination of drugs and firearms wasn't adequately addressed by the guidelines, particularly at the low end at sentencing—nor would it be accounted now by early release. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A); *see also* U.S.S.G. § 1B1.13(2) (defendant must not be "a danger to the safety of any other person or to the community"); 18 U.S.C. § 3142(g) (establishing standard for this guideline).

No less true that is when Mr. Jones' crimes *de jour* have been guns and drugs historically—dealing drugs in 2018 and 2019 and committing three prior firearm offenses. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). Ten years or so of past imprisonment hadn't deterred him, nor had probation, so the court decided that the grace of a low-end sentence would walk the law's response to his persistence in crime backwards and fail to protect the public. *See* 18 U.S.C. §§ 3553(a)(2)(B), (a)(2)(C). Effecting an early release today would walk back these same federal goals of incapacitation, public protection, and deterrence. Service of less than half his sentence fails to promote respect for the law here, much less address the full seriousness of his offense conduct. *See* 18 U.S.C. § 3553(a)(2)(A).

Accordingly, the court DENIES the motion for compassionate release (ECF 83).

SO ORDERED.

February 22, 2021                                    *s/ Damon R. Leichty*
                                                              Judge, United States District Court